**IN THE UNTIED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEKSANDER ZAREBICKI** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DEVEREUX FOUNDATION, et al.** | : | **No. 09-6205** |

**MEMORANDUM OPINION**

**Goldberg, J.**                                                                                    **June  30,  2010**

Plaintiff, Aleksander Zarebicki, through his parents, initiated this civil rights action pursuant to 42 U.S.C. § 1983 ("§ 1983") against the Devereux Foundation (Devereux), a residential group-care facility for the mentally disabled where he resided.  Plaintiff alleges that Devereux failed to protect him from the assault of another resident, Justin Genuardis, who has also been sued under § 1983 and state law.

Before the Court are the motions to dismiss of Devereux and Genuardis.  For the following reasons, both Defendants' motions will be granted such that Plaintiff's § 1983 claims are dismissed. We will also dismiss Plaintiff's supplemental state law claims against both Defendants, without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

**I.      FACTUAL AND PROCEDURAL HISTORY**

The facts alleged in the amended complaint, viewed in the light most favorable to Plaintiff, are as follows.

Plaintiff suffers from significant mental disabilities and has resided in a residential group-care facility owned by Devereux since 2001.  Defendant, Justin Genuardis, who also suffers from mental disabilities, also resided at Devereux.  On January 5, 2008, Genuardis physically attacked Plaintiff by putting his arm around Plaintiff's neck and choking him.  Devereux staff members

1

initially separated the two and directed Genuardis to another room, however, shortly thereafter, Genuardis re-entered the room and bit Plaintiff on his face, near his eye lid, and on his nose, ear and upper right arm.[1]  (Compl. ¶¶ 1, 7, 10-17.)

Plaintiff was taken by ambulance to the hospital where he underwent plastic surgery to repair injuries to his face.  He still has significant scarring as a result of his injuries and will need additional surgery to repair the tear ducts in his right eye.  Along with his physical injuries, Plaintiff has suffered continuing psychological trauma.   (Compl. ¶¶ 18-21.)

On December 31, 2009, Plaintiff initiated this action against Devereux and Genuardis, raising claims under 42 U.S.C. § 1983 and Pennsylvania state law.  In support of his § 1983 claim, Plaintiff alleges that Devereux acted "under the color of state law" and therefore is liable for failing to keep him safe from physical violence under constitutional due process principles.  Specifically, Plaintiff alleges that Devereux "has been a state actor in that they provide a public function, receive direction and aid from the state of Pennsylvania and are dependent on their funding by the State of Pennsylvania to the extent that they would cease to operate without these funds."  Plaintiff also contends that Devereux "has acted together with or has obtained significant aid from state officials and by its nature, has performed services that are traditionally chargeable to the state."  Plaintiff explains that he was "placed in the care of [Devereux] . . . by the Pennsylvania Department of Public Welfare," and that Devereux was "licensed by the Department of Public Welfare" and "required to comply with all applicable statutory and licensing requirements[.]"  (Compl. ¶¶ 7-8, 30, 33.)

On May 5, 2010, Devereux filed a motion to dismiss, followed by Genuardis' motion to

---

[1] Genuardis had previously bitten Plaintiff on the forearm on August 31, 2004.  The bite resulted in minor injuries.  (Compl. ¶ 12.)

dismiss, filed on May 21, 2010.

## II.    MOTION TO DISMISS STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all factual allegations

in the complaint are accepted as true, and all inferences are drawn in favor of the plaintiff.  The issue

"is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974), *overruled on*

*other grounds by* Davis v. Schere, 468 U.S. 183 (1984).  To survive a motion to dismiss, a complaint

must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible

on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard requires more than a "sheer

possibility that a defendant has acted unlawfully."  Id.

## III.    DISCUSSION

Devereux moves to dismiss Plaintiff's claims, asserting that it is a private, non-profit

organization, which is not subject to liability under 42 U.S.C. § 1983.  Devereux further contends

that it is immune from liability under Plaintiff's state law claims.  Genuardis also seeks dismissal

of the claims against him, asserting that due to his severe mental disability, he does not have the legal

capacity to be sued and is incapable of committing the intentional torts alleged against him.

Genuardis also contends that the case should be dismissed because Plaintiff's parents, who brought

the action on his behalf, are not "real parties in interest."[2]

_____

[2] Although Plaintiff's amended complaint asserts a § 1983 claim against both Defendants, he is not pursuing a federal claim against Defendant Genuardis.  See (Doc. No. 17 at 8-10) (reflecting that Plaintiff is asserting a supplemental battery claim against Genuardis, not a § 1983 claim).  We, therefore, will grant Genuardis's motion to dismiss to the extent that he seeks dismissal of the § 1983 claim against him.

We will first address Devereux's challenge to Plaintiff's § 1983 claim.

**A.      Claims Under 42 U.S.C. § 1983**

Under 42 U.S.C. § 1983, a plaintiff must demonstrate that his or her federal constitutional or statutory rights were violated by a person acting "under the color of state law."  Kost v. Kozakiewitz, 1 F.3d 176, 184 (3d Cir. 1993).  Plaintiff alleges that he has met this standard in that Devereux, a state actor, failed to protect him and keep him safe, as is required by the Fourteenth Amendment Due Process Clause.[3] (Compl. ¶¶ 29-42.)  Devereux responds that Plaintiff has failed to allege facts that demonstrate it acted "under the color of state law."

The "under color of state law" requirement ensures that only conduct fairly attributable to the state is actionable under § 1983 and that private conduct, no matter how wrongful or discriminatory, escapes liability.[4]  See Leshko v. Servis, 423 F.3d 337, 339-40 (3d Cir. 2005).  There is no "simple line," however, between what constitutes private and state action.  Brentwood Academy v. Tennessee Secondary School Athletic Assn., 531 U.S. 288, 295 (2001) (given the wide

---

[3]  The due process clause imposes an affirmative obligation upon states to protect individuals from private violence, where: (1) there is a "special relationship" between the individual and the state; or (2) where there is a "state created danger[.]" See Bright v. Westmoreland Cnty., 443 F.3d 276, 280-81 (3d Cir. 2006); see also Torisky v. Schweiker, 446 F.3d 438, 446-48 (3d Cir. 2006).  In order to succeed under either standard, plaintiff must demonstrate that the defendant's behavior "shocks the conscious," which is a level of culpability that changes depending upon the specific circumstances of the case.  See Nicini v. Morra, 212 F.3d 798, 809-12 & n.9 (3d Cir. 2000) (under "special relationship" theory, plaintiff may have to demonstrate, depending on the facts of the case, that defendant failed to exercise any professional judgment, was deliberately indifferent or acted with "gross negligence or arbitrariness"); Sanford v. Stiles, 456 F.3d 298, 305-10 (3d Cir. 2006) (under the "state created danger" theory, the degree of culpability depends upon the urgency of the situation at issue, and may range from "deliberate indifference" to intentional misconduct).

[4] This standard is equivalent to the "state action" requirement under the Fourteenth Amendment.  See Leshko, 423 F.3d at 339.

variety of tests and factors employed by the Supreme Court, "examples may be the best teachers").

The essential question is whether the challenged activity "may be fairly treated as that of the State

itself[.]" Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). Although this is a "fact-specific

inquiry[,]" it may be addressed on a motion to dismiss. Schneider v. Arc of Montgomery Cty., 497

F.Supp.2d 651, 660 (E.D.Pa. 2007) (collecting cases).

The United States Court of Appeals for the Third Circuit has developed "three broad tests"

to determine whether, under the pertinent Supreme Court cases, a private defendant is a state actor:

(1) whether the defendant exercised powers that are "traditionally the exclusive prerogative of the

state;" (2) whether the defendant acted "with the help of or in concert with state officials;" or (3)

whether the "state has so far insinuated itself into a position of interdependence with the acting party

that it must be recognized as a joint participant in the challenged activity[.]" Kach v. Hose, 589 F.3d

626, 645 (3d Cir. 2009) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995)).

In deciding whether there has been state action, the court must remain focused on the central purpose

of the state action inquiry – to "assure that constitutional standards are invoked when 'it can be said

that the state is *responsible* for the specific conduct of which plaintiff complains.'" Brentwood, 531

U.S. at 295 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (emphasis in original).

Plaintiff asserts that he meets tests one and three,[5] set forth in Kach. We examine each test

in detail below.

---

[5] Plaintiff articulates that "state action is established under the nexus test, the delegation test and the 'public function' test." (Pl.'s Br. at 9.) Plaintiff also relies upon Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961), which articulated the "symbiotic relationship" analysis. These state action inquiries are captured under tests one and three of the Kach case.

Test One: Has a Traditional and Exclusive Public Function Been Delegated?

The first test imposes a "'rigorous standard' that is 'rarely . . . satisfied.'" Robert S. v. Stetson School, Inc., 256 F.3d 159, 165 (3d Cir. 2001) (quoting Mark, 51 F.3d at 1142); see Brown v. Phillip Morris Inc., 250 F.3d 789, 802 (3d Cir. 2001). It requires the court to determine whether the defendant was performing a function that is "traditionally and exclusively" the province of the state. Leshko, 423 F.3d at 343.

Here, Plaintiff does not allege that providing custody, care and habilitative services to its mentally disabled citizens is both a traditional and exclusive prerogative of Pennsylvania.[6] See (Compl. ¶ 30) (wherein Plaintiff only alleges that Devereux performed "services that are traditionally chargeable to the state," but does not allege those services are the exclusive prerogative of Pennsylvania). Rather, Plaintiff appears to disregard the applicable standard noted above and argues that Devereux is a state actor based upon the fact that Pennsylvania has assumed a responsibility to care for mentally disabled citizens by statute and regulation and affirmatively delegated this responsibility to Devereux. Plaintiff presses this argument, relying primarily upon Fialkowski v. Greenwich Homes for Children, Inc., 683 F.Supp. 103, 104 (E.D.Pa. 1987), and urges that Devereux is a state actor by virtue of performing this delegated "public function[.]" (Pl.'s Resp. at 9.)

In Fialkowski, a mentally disabled man choked on a sandwich and died while residing at a "community living arrangement" for the mentally disabled that was operated by a private corporation. 683 F.Supp. at 104 & n.1. A § 1983 suit was brought against the corporation, alleging a failure to provide reasonable care and safe surroundings. The defendant corporation filed a motion

---

[6] "Habilitation" is a term of art used to describe "education, training and care" to help individuals with mental disabilities achieve their maximum development. Halderman v. Pennhurst State School, 995 F.Supp. 534, 535-36 (E.D.Pa. 1998).

to dismiss on state action grounds. The court denied the motion because "Pennsylvania had assumed a duty to provide custody, care, and habilitative services, including residential services," to the mentally disabled and delegated this duty to the defendant. Id. at 104-05. The court reasoned that "[w]here the state chooses to delegate these responsibilities, and an institution or other private entity chooses to assume them, neither the state nor the private entity may assert that the entity's acts and omissions do not occur under color of state law." Id. (citing Davenport v. Saint Mary Hosp., 633 F.Supp. 1228, 1234 (E.D.Pa. 1986). In reaching this conclusion, the court focused on the fact that the state had delegated to defendant its "affirmative duty, imposed by the due process clause of the fourteenth amendment," to provide reasonable care and safe surroundings to mentally disabled citizens that it chooses to care for in a residential care setting. Id. (citing Youngberg v. Romeo, 457 U.S. 307 (1982)).

After careful review of United States Supreme Court and Third Circuit precedent, regarding when a private entity may be sued as a "state actor," I decline to follow the reasoning of Fialkowski. In Jackson v. Metropolitan Edison Co., the Supreme Court considered whether a private company that was required by statute to supply utilities to state citizens was a state actor. 419 U.S. 345, 352 (1974). The Court held that it was not, because in providing utility services, the company was not "exercising a power[] traditionally exclusively reserved to the State." Id. at 353. The Court noted that the "case would be quite a different one" if the defendant was exercising "a power delegated to it by the State which is traditionally associated with sovereignty, such as eminent domain[.]" Id.

Similarly, in Rendell-Baker v. Kohn, the Supreme Court considered whether a privately-owned school for maladjusted high school students was a state actor. 457 U.S. 830, 832 (1982). Pursuant to state law, public schools referred troubled students to the defendant at public expense in order to satisfy state law requirements to provide these students with necessary educational

7

services. 457 U.S. 830, 832 & n.1 (1982). The court held that the defendant was not a state actor,

reasoning that although the state clearly intended to provide education to maladjusted high school

students, this "public function" had not been "traditionally the *exclusive* prerogative of the State."

Id. at 842 (quoting Jackson, 419 U.S. at 353) (emphasis in original).

These cases make clear that the delegation of a "public function" to a private entity, without

more, is insufficient to establish state action. As the Third Circuit has recognized, it is the

"traditional" and "exclusive" nature of the delegated function that drives this analysis. Benn v.

Universal Health System, Inc., 371 F.3d 165, 172 (3d Cir. 2004) (involuntary commitment of

mentally ill not an "exclusive" public function, thus delegation to private entity does not constitute

state action); Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995) (discussing Jackson

and Rendell-Baker and concluding that the "exclusivity" requirement has been stressed by the court,

making it extremely difficult for plaintiff's to satisfy this standard).[7]

I also decline to follow Fialkowski to the extent that its state action analysis centered upon

Pennsylvania's alleged delegation of a constitutional duty of care and protection to the defendant.

In describing the constitutional significance of the state's delegation of responsibility, the Fialkowski

---

[7] Plaintiff also relies upon Ruffler v. Phelps Memorial Hospital, where the Southern
District of New York held that a private hospital was acting under the color of state law when it
involuntarily committed a mentally ill man. 453 F.Supp. 1062 (S.D.N.Y. 1978). Plaintiff
contends that the court's holding was based upon the fact that the state adopted civil treatment
and commitment as a "public function," and enabled the private hospital to "share" in this
function. (Pl's Resp. at 11) (citing Ruffler, 453 F.Supp. at 1067-69.) We disagree that this was
the only basis for the court's conclusion, as the court also discussed "historical" state
involvement in this area and the specific facts of the case. 453 F.Supp. at 1070. Nevertheless,
we decline to adopt the analysis Plaintiff cites from the Ruffler opinion for the same reasons we
declined to follow Fialkowski. See Sybalski v. Independent Group Home Living Program, Inc.,
2007 WL 1202864 at **4-5 (E.D.N.Y. Apr. 24, 2007) (rejecting approach taken in Ruffler and
Fialkowski as "contrary to Supreme Court's test for whether a non-state entity's adoption of a
'public function' renders it a state actor").

court noted that, "[u]nder existing case law," the state must provide reasonable care and protection to mentally disabled citizens in state care, regardless of whether they are voluntarily or involuntarily committed. Id. at 105. This pronouncement, however, has been undermined by subsequent cases. DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989) (holding that the due process clause only imposes duty of care and protection upon the state when the state deprives citizens of freedom "through incarceration, institutionalization or other similar restraint of personal liberty"); Torisky v. Schweiker, 446 F.3d 438, 445-48 (3d Cir. 2006) (reviewing Supreme Court and Third Circuit precedent and concluding that the voluntary nature of one's custody and continued confinement does impact the availability of the rights to care and protection" of mentally disabled individuals in state facility).

Indeed, on appeal from the district court's grant of summary judgment in Fialkowski, the Third Circuit held that the plaintiff was not owed an affirmative duty of care and protection under the Fourteenth Amendment. Fialkowski v. Greenwich Home for Children, Inc., 921 F.2d 459, 465-66 (3d Cir. 1990) (quoting DeShaney, 489 U.S. at 200). Although the Court's decision did not address state action, and therefore did not affirm or overrule the district court's state action analysis, the Third Circuit's opinion did undermine the district court's conclusion that the state had delegated a constitutional duty to the defendants.

Accordingly, I conclude that Plaintiff has not sufficiently alleged that Defendant is a state actor under the first test, especially considering how difficult it is to satisfy. See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978) (noting that "[w]hile many functions have been performed by governments, very few have been exclusively reserved to the state"). Plaintiff's amended complaint raises no allegations that Pennsylvania has traditionally and exclusively provided custody, care and habilitative services to its mentally disabled citizens. Plaintiff contends that, if provided an

opportunity to pursue discovery, he "will show that Defendant, its subsidiaries, and joint ventures, operate over 100 facilities across the Commonwealth, further demonstrating that Defendant has supplanted the Commonwealth as a provider of Medicaid-funded services for the developmentally disabled." (Pl.'s Resp. at 13 n.3.) This does not, however, sufficiently demonstrate that the services Plaintiff received are now, or have been, the exclusive prerogative of Pennsylvania. In addition, aside from asserting that Defendant performs services "traditionally chargeable to the state[,]" (Compl. ¶ 30), Plaintiff offers no factual allegations or argument in support of this conclusion.[8]

I recognize that "[i]n civil rights cases, district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). However, given Pennsylvania's involvement in the care and custody of the mentally disabled, I am convinced that providing Plaintiff an opportunity to amend his complaint would be futile.

In Pennsylvania (and in the United States more broadly), the care of individuals with developmental disabilities was seen as a "family and local concern" until the 1840s. Schneider v. Arc of Montgomery County, et al., 497 F.Supp.2d 651, 655-56 (E.D.Pa. 2007) (citing JAMES W. TRENT, INVENTING THE FEEBLE MIND: A HISTORY OF MENTAL RETARDATION IN THE UNITED STATES 2, 15 (1994)). In Pennsylvania, private citizens have and continue to provide care for

---

[8] Cf. Mark v. Borough of Hatboro, 5 F.3d 1137, 1143-46 (3d Cir. 1995) (holding that volunteer fire company was a state actor because firefighting is a "governmental function," which Pennsylvania had traditionally been required to provide, and volunteer fire companies are treated, in all relevant respects, as governmental entities under Pennsylvania law).

developmentally disabled members of their families.[9] I, therefore, am unable to foresee how Plaintiff

could plausibly demonstrate that providing custody, care and habilitative services to the mentally

disabled is a traditional and exclusive prerogative of Pennsylvania. Cf. Sybalski v. Independent

Group Home Living Program, Inc., 2007 WL 1202864 at **4-5 (E.D.N.Y. Apr. 24, 2007)

(concluding that a private group home for mentally disabled, certified and licensed under New York

law, was not a state actor because "care for the mentally disabled was neither traditionally nor

exclusively reserved to the state"); Karaahmetoglu v. Res-Care, Inc., 480 F.Supp.2d 183, 188 (D.C.

2007) (granting of motion to dismiss, holding that "plaintiff has not even established that the

provision of residential and rehabilitative services for voluntary commitments should be considered

a traditional state function").

This conclusion is bolstered by the Third Circuit's decision in Leshko v. Servis, 423 F.3d 337

(3d Cir. 2005), which undertook an in-depth analysis of whether a function is traditionally and

exclusively reserved to the state. In Leshko, plaintiff sustained serious burns when her foster mother

---

[9] See Youngberg v. Romeo, 457 U.S. 307, 309 (1982) ("profoundly retarded" plaintiff
resided with his parents for the first 26 years of his life before being placed in state custody after
his father's death); In re Schmidt, 429 A.2d 631, 633 (1981) (considering the "residential
placement" of the mentally disabled in Pennsylvania, and declaring that "we . . . embrace the
view that a mentally retarded person shall not be determined to require involuntary placement
unless the degree of retardation shows an inability to provide for the most basic personal needs
and provision for such needs is not available and cannot be developed or provided for in the
existing home or in the community in which the individual resides") (emphasis added);
Philadelphia Police and Fire Association for Handicapped Children, Inc. v. City of Philadelphia,
874 F.2d 156, 158-59 (3d Cir. 1989) ("In Pennsylvania, state-subsidized habilitation of the
mentally retarded is performed in a variety of settings ranging from state institutions to the
retarded person's home[,]" and noting that counties are delegated authority to develop plans,
where appropriate, to place "mentally retarded individuals either in the institution, a group home,
or with his family"). Cf. Blum v. Yarestsky, 457 U.S. 991, 1011-12 (1982) (even if state was
responsible for providing nursing home services to Medicaid patients, "it would not follow that
decisions made in the day-to-day administration of a nursing home are the kind of decisions
traditionally and exclusively made by the sovereign for and on behalf of the public").

allegedly left her alone next to a pot of hot water, which she overturned onto herself. Plaintiff alleged that her foster parents violated her Fourteenth Amendment right to be free from physical harm, and that they were state actors because they were county "employees" and Pennsylvania had placed her in their custody pursuant to its statutory foster care system. Id. at 337-39.

The Third Circuit affirmed the district court's dismissal of plaintiff's complaint, holding that the defendants were not state actors because the state had not delegated a "traditional and exclusive" state function. The Court concluded that no aspect of the foster care system had been the exclusive province of Pennsylvania and distinguished the state's care for foster children from its provision of medical services to prisoners, which constituted state action under West v. Atkins, 487 U.S. 42, 54-55 (1988). Id. at 343-47.

In distinguishing West, the Court determined that, while "[c]onstitutional obligations on a state are powerful evidence that the required functions are traditionally governmental," neither the "federal Constitution nor the Pennsylvania Constitution requires that the state provide care for foster children." Id. at 344. Foster care in Pennsylvania, rather, "is a creature of statute, begun in 1981 under Pennsylvania's Juvenile Act."[10] Id. The Leshko Court also determined that, unlike the prisoner in West, plaintiff's care was not delivered in an institutional setting. Further, although only Pennsylvania could select plaintiff's caregiver, as in the case in prison, "[i]t simply cannot be said that, historically, foster children in Pennsylvania could only turn to caregivers authorized by the Commonwealth." Id. at 345-47.

Similarly, Pennsylvania's provision of care, custody and habilitative services to the mentally

_____

[10] The Court also noted that a state's common law duty to perform a function may suggest it is quintessentially governmental. However, while the Court acknowledged that Pennsylvania "may have a common law duty to supply care for needy children since the formation of the Commonwealth, such a generalized duty is insufficient to support a finding of state action." Id. at 345.

disabled is also a "creature of statute," which is not mandated by the federal Constitution or the Pennsylvania Constitution.[11]  Although Plaintiff was not cared for in a private residence, as the plaintiff in Leshko, he received treatment in a private "group home."  See (Compl. ¶¶ 10-28.) Plaintiff has not offered any allegations to suggest that his experience in this setting was comparable to the "tight security-based strictures of prison life," such that "persuasive institutional influences" render his situation analogous to that of a prisoner or an involuntary civil commitment who is constrained by authority that is "quintessentially governmental."[12] Leshko, 423 F.3d at 346.  Further, as in Leshko, mentally disabled citizens have not, historically, been required to turn to Pennsylvania or state-authorized entities for care, custody and habilitative services.  See id. at 345-47.

Therefore, in light of the foregoing analysis, I conclude that Plaintiff has failed to allege sufficient facts to support a finding of state action under test one and that any proposed amendment to his complaint would be futile.

Test Three: Was there "Joint Participation" with the State?

The third test asks whether the "state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenge activity[.]"  Kach v. Hose, 589 F.3d 626, 645 (3d Cir. 2009) (quotations omitted).  A sufficient interdependence may be demonstrated by a "close nexus" between the state and the private activity

---

[11] See Mental Health and Mental Retardation Act of 1966, 50 P.S. §§ 4100, et seq.; In re Schmidt, 429 A.2d 631, 634-37 (Pa. 1981) (describing legislation that delegated responsibility to the state and counties to provide certain services to mentally disabled individuals in need of such services).  Cf. Schneider, 497 F.Supp.2d at 657 (noting that community based social services to mentally disabled is "'creature of statute' of relatively late vintage") (quotations omitted).

[12] Robert S. v. Stetson School, Inc., 256 F.3d 159, 164-67 & n.9 (3d Cir. 2001) (rejecting argument that private school that provided residential schooling to juvenile sex offenders in a restrictive setting was state actor, as it did not perform traditional and exclusive public function and plaintiff's situation was not "analogous" to that of a prisoner or an involuntary civil commitment).

at issue, which generally "depends upon whether the state has exercised coercive power or has provided significant encouragement, either overt or covert," such that the decision or action may be fairly attributed to the state. American Mfg. Mut. Ins. Co v. Sullivan, 526 U.S. 40, 52 (1999); Jackson, 419 U.S. at 351. A "symbiotic relationship" between the state and a private entity may also establish a connection sufficient to support a finding of state action. See Leshko v. Servis, 423 F.3d 337, 340 (3d Cir. 2005); Crissman v. Dover Downs Entertainment, Inc., 289 F.3d 231, 239 (3d Cir. 2001) (discussing the "close nexus" and "symbiotic relationship" tests). Cf. Gorman v. Township of Manalapan, 47 F.3d 628, 639 (3d Cir. 1995).

Plaintiff appears to contend that Devereux is a state actor under either the "close nexus" or "symbiotic relationship" analysis, stressing that Devereux would cease to operate without the funding it receives from Pennsylvania, both directly and as a result of Pennsylvania's participation in the federal Medicaid Program. Plaintiff further alleges that pursuant to state statutes and regulations, Pennsylvania agencies "set standards for[,] . . . examine[] and inspect [Devereux] to determine its suitability and proper operation" and have authority to "suspend, revoke or limit any operating certificate if Defendant fails to comply" with state regulations.[13] These allegations, however, are insufficient to establish state action.

---

[13] See (Pl.'s Resp. at 12; Compl. ¶¶ 7-8); 50 PA. CONS. STAT. § 4201 (providing access to "mental health and mental retardation services for all persons who need them" and providing Department of Public Welfare authority to supervise "mental health and mental retardation facilities"); 50 PA. CONS. STAT. §§ 4507-09 (providing for disbursement of state funds in support of services to mentally disabled); 55 PA. CODE. § 6000.778 (providing for "revocation, denial and nonrenewal" of a provider's license or certification if requirements of "provider agreement" are not satisfied). Compare 55 PA. CODE §§ 1101.42(a), 6210.11 (reflecting that Pennsylvania's Medical Assistance Program (MA) provides payment for "intermediate care for the mentally retarded provided to eligible recipients by providers enrolled in the MA program") with Nickel v. Worker's Compensation Appeal Board, 959 A.2d 498, 506 (Pa.Cmwlth. 2008) (reflecting that Pennsylvania participates in federal Medicaid program through its MA program, which is administered by the Department of Public Welfare).

Initially, a private entity's dependance upon state funding does not make it a state actor. Rendell-Baker, 457 U.S. at 840; Blum, 457 U.S. at 1011 (holding that nursing homes are not state actors, even though the state subsidized their operating and capital costs and paid the medical expenses of over 90% of their patients). In Rendell-Baker v. Kohn, the Supreme Court rejected the argument that a private high school was a state actor because "virtually all of the school's income was derived from government funding." Id. The Court concluded that the private school was "not fundamentally different from many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government[,]" and "[a]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." Id. at 841-42.

In addition, state regulation of a private entity, even if "extensive and detailed," is insufficient to support a finding of state action. Jackson, 419 U.S. at 350. In Blum v. Yarestsky, the Supreme Court considered whether private nursing homes were operating under the color of state law when they decided to transfer Medicaid patients to less expensive facilities. 457 U.S. at 1006-08. The nursing homes were designated by the state as Medicaid providers and required by law to periodically assess whether Medicaid patients should be transferred to other facilities. They were also required to complete "patient care assessment forms" provided by the state, and were encouraged by state regulation "to make all efforts possible to transfer patients to the appropriate level of care or home[.]" Id. at 1006-09. Failure to abide by these directives could have resulted in exclusion from participation in the Medicaid program or a fine. Id. at 1010-11. Based on these facts, the Court held that the nursing homes, although "extensively regulated[,]" were not state actors because the state did not compel or influence their ultimate decision of whether to transfer a patient. Id. at 1104, 1106-10. In light of Rendell-Baker and Blum, Plaintiff's allegations of financial

dependency and extensive state regulation fall short.

In asserting that Defendant and the state were joint participants, Plaintiff also relies upon the "Abuse" provision set out in the Public Welfare section of 55 PA. CODE § 6400.16.  This provision provides that:

> Abuse of an individual is prohibited.  Abuse is an act or omission of an act that wilfully deprives an individual of rights or human dignity or which may cause or causes actual physical injury or emotional harm to an individual, such as striking or kicking an individual; neglect; rape; sexual molestation, sexual exploitation or sexual harassment of an individual; sexual contact between a staff person and an individual; restraining an individual without following the requirements of this chapter; financial exploitation of an individual; humiliating an individual; or withholding regularly scheduled meals.

55 PA. CODE § 6400.16.   Plaintiff claims that this provision placed an "affirmative duty" upon Devereux to protect Plaintiff "from exactly the type of abuse he suffered."  (Pl.'s Resp. at 11.)

Even accepting, however, that Plaintiff was subject to "Abuse" as defined under the Code, this provision does not render Devereux a state actor.  Plaintiff's § 1983 claim is predicated upon Devereux's alleged failure to exercise "appropriate care" and its "substantial departur[e]" from "accepted professional standards" in failing to properly "protect" Plaintiff, "supervise" Genuardis and "investigate" past aggressive behavior by its residents.  See (Compl. ¶¶ 35-36.)  Given these allegations, I am unable to conclude that § 6400.16 compelled or influenced Devereux to act in the manner alleged, such that the state can be said to be "responsible" for the private action at issue. There is no allegation in Plaintiff's complaint that, by virtue of this provision, Pennsylvania condoned, encouraged or participated in the manner in which Defendant attempted to protect Plaintiff from other residents.  As in Blum, Plaintiff's allegations ultimately turn upon "judgments

16

made by private parties according to professional standards that are not established by the state."[14]

Id. at 1107.

I also conclude that Plaintiff has failed to allege sufficient facts to support a finding that Devereux had a "symbiotic" relationship with the state under Burton v. Wilmingtom Parking Authority, 365 U.S. 715, 724 (1961), which held that a private restaurant's refusal to serve a customer because of his race was state action, since the restaurant and the state had a symbiotic relationship. The restaurant was located on a state-owned parking facility and the state was highly dependent upon lease payments and parking revenue it derived from the restaurant's business. Id. at 724-25. Further, the restaurant appeared to be part of a public complex, due to its location, and the state performed maintenance and provided utilities for the restaurant. The court also concluded that the alleged discrimination actually benefitted the defendant's business, and by extension, the state parking facility. Id.

Here, the facts alleged by Plaintiff do not include allegations that Devereux's facilities were on public property or were leased from Pennsylvania. Nor does Plaintiff claim that Pennsylvania provided Devereux maintenance services or participated in its day-to-day operation. While Plaintiff asserts that the Defendant and Pennsylvania derived mutual financial benefit from providing care to the mentally disabled, (Pl.'s Resp. at 13), Plaintiff does not allege that the challenged activity

---

[14] See id. at 1004, 1106-10 (defendants were not state actors, although state regulations required defendants to periodically evaluate whether a patient should be transferred, encouraged them to transfer patients and controlled the way transfer decisions were communicated, because the ultimate decision was based upon the defendant's professional judgment); Albert v. Carovano, 851 F.2d 561, 571 (2d Cir. 1988) (private college's enforcement and disciplinary actions was not state action, although state law required it to adopt and file disciplinary rules with the state, since state law did not compel any particular disciplinary decision); Klaven v. Crozer-Chester Medical Center et al., 60 F.Supp.2d 436, 440, 443 (E.D.Pa. 1999) (hospital was not state actor where it ignored patient's "advanced medical directive" in violation of state law, because plaintiff failed to allege that state law "coerced, encouraged, or in any way influenced the defendant's decision with respect to him").

(Devereux's alleged failure to protect Plaintiff) "contributed to . . . the financial success" of Devereux and Pennsylvania.[15]   Burton, 365 U.S. at 724; see Crissman v. Dover Downs Entertainment Inc., 289 F.3d 231, 240-45 (3d Cir. 2001) (analyzing the "symbiotic relationship" test described in Burton and determining that this test is only applicable to facts that "replicate" those in Burton).

I, therefore, conclude that Plaintiff has failed to allege facts sufficient to demonstrate that Devereux is a state actor under the third Kach test. I also conclude that it would be futile to provide Plaintiff an opportunity to amend his complaint to address these deficiencies. Plaintiff has already had an opportunity to amend his complaint. Further, the allegations and arguments he presents in support of his amended complaint fail to demonstrate that providing him another opportunity to amend would enable him to plead facts sufficient to establish state action under test three.

Plaintiff's Request for an Opportunity to "Develop the Record."

Lastly, Plaintiff urges that we may not resolve this case at the motion to dismiss stage, considering the fact-specific and detailed nature of the state action inquiry. He insists that the "parties should be permitted to conduct discovery and offer evidence to the Court of all relevant facts." (Pl.'s Resp. at 8, 13-14.) It is, however, entirely appropriate to dismiss § 1983 claims on state action grounds. See Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974) (affirming motion to dismiss on state action grounds); Leshko, 423 F.3d at 337 (same). Faced with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts which support a plausible claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). It is insufficient for

---

[15] Whether a private entity is performing a "traditional public function" may be a relevant factor to consider under the third test. See Mark v. Borough of Hatboro, 5 F.3d 1137, 1143-49 & n.7 (3d Cir. 1995). However, as described above, Plaintiff has not offered any allegations or presented any argument to suggest that providing care, custody and habilitative services to the mentally disabled is a traditional public function in Pennsylvania.

Plaintiff to simply allege that discovery will bear out his claim.

**B.     Supplemental State Law Claims**

Plaintiff's remaining claims are based on state law.  A district court may decline to exercise supplemental jurisdiction over such claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  The Third Circuit has held that "[i]f it appears that the federal claim is subject to dismissal under [Federal Rule of Civil Procedure] 12(b)(6) . . . then the court should ordinarily refrain from exercising jurisdiction in the absence of exceptional circumstances."  Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 195 (3d Cir. 1976).   No such exceptional circumstances exist here, especially considering that this case is at the motion to dismiss stage and the parties have not engaged in discovery.  MCF Services v.  Ernest Bock & Sons, 2007 WL 4355388 at **1, 3-4 (E.D.Pa. Dec. 11, 2007) (exceptional circumstances did not exist even where the federal claim was dismissed at summary judgment stage, after discovery, particularly considering that 42 U.S.C. § 1367(c) tolls period of limitations for supplemental state law claims).

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's claims under 42 U.S.C. § 1983 are granted.  I also decline to exercise jurisdiction over Plaintiff's remaining state law claims.

Our Order follows.